UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

360 CONSTRUCTION COMPANY, INC.,

        Plaintiff,

v.                                                          Case Number 11-12344
                                                          Honorable David M. Lawson

ATSALIS BROTHERS PAINTING CO.,
GARRY D. MANOUS, NICK ATSALAKIS,
and ANDREW RICHNER,

        Defendants.
_____/

## **MEMORANDUM ORDER DENYING MOTION FOR PROTECTIVE ORDER**

      Defendants Atsalis Brothers Painting Company (Atsalis Brothers Painting), Garry Manous, and Nick Atsalakis (collectively, the moving defendants) seek a protective order to prevent co-defendant Andrew Richner and Richner's law firm, Clark Hill, PLC, from producing certain documents to the plaintiff in response to a discovery subpoena. The moving defendants contend that the documents are protected by either the attorney-client privilege or the attorney work product doctrine. However, as explained below, the moving defendants have waived the attorney-client privilege with respect to the requested documents and that the work product doctrine does not apply. Therefore, the Court will deny the motion for a protective order and order production of the documents.

I.

      Plaintiff 360 Construction Company, Inc. filed this suit against the moving defendants for sending allegedly defamatory communications to the Michigan Department of Transportation (MDOT) in connection with bidding on a contract to clean and recoat the Mackinac Bridge's structural steel. 360 Construction was the lowest bidder on the project, and Atsalis Brothers

Painting was the second lowest bidder. Shortly after MDOT announced that the plaintiff was the low bidder, the plaintiff alleges that the moving defendants began a smear campaign against the plaintiff. One of the allegedly defamatory communications was a June 23, 2010 memorandum (the Memorandum) drafted by attorney Andrew Richner, a lawyer employed by the Clark Hill law firm. The Memorandum was directed to Nick Atsalakis and asserted that the plaintiff should be disqualified from bidding on the Mackinac Bridge project because the plaintiff was related through common ownership and management to Allstate Painting & Contracting Company — a company that had been sued by the MDOT and the Mackinac Bridge Authority for breach of warranty. The Memorandum found its way to William Gnodtke of the Mackinac Bridge Authority.

The Office of Commission Audits investigated Atsalis's allegations, including those set forth in the Memorandum. Although the Commission found most of the allegations to be without merit, it did find that George Roditis, a former officer, director, and employee of Allstate Painting and current employee of 360 Construction, was unsuitable to participate in a publicly funded project. After a seven-month delay, the contract was awarded to the plaintiff on the condition that Roditis be barred from the project.

On May 27, 2011, the plaintiff filed a complaint against Atsalis Brothers Painting, Garry Manous, and Nick Atsalakis alleging claims for defamation, libel, unlawful disparagement, respondeat superior, interference with business contract, and interference with business relationship based on communications between Atsalis (and its employees and agents) and the MDOT. On October 14, 2011, defendants Atsalis Brothers Painting, Garry Manous, and Nick Atsalakis filed notice of non-party fault alleging that liability rests with Clark Hill, Andrew Richner, and several other individuals and businesses. On January 20, 2012, the Court granted the plaintiff leave to

amend its complaint; the first amended complaint added Andrew Richner as a defendant. On February 28, 2012, the plaintiff filed its second amended complaint adding a claim for negligence.

In response to the plaintiff's first set of interrogatories, the moving defendants admitted that Richner sent the Memorandum to William Gnodtke of the Bridge Authority. In response to the plaintiff's first set of requests for documents, the moving defendants produced a copy of the Memorandum and its attachments. On December 14, 2011, the plaintiff served Andrew Richner and Clark Hill with subpoenas commanding them to produce the following documents on December 30, 2011:

> 1. Any and all drafts of the Memorandum.
>
> 2. Any communication (including e-mails) to and or from Nick Atsalakis, Garry Manous, Atsalis Brothers Painting Co. ("Atsalis"), or to or from anyone on Atsalis's behalf, which mentions, refers to, and/or concerns the Memorandum.
>
> 3. Any and all research which supports the comments, statements, and/or allegations in said Memorandum;
>
> 4. Any and all notes, logs, records, or other documents illustrating your investigation into the comments, statements, and/or allegations in said Memorandum;
>
> 5. Any and all documents which prompted you to prepare said Memorandum (including requests, demands, instructions).
>
> 6. Any and all transmittal documents with which the Memorandum was sent.
>
> 7. Any and all documents requesting that you send or forward the Memorandum.
>
> 8. Any and all documents you received in response to said Memorandum, including follow up letters to, and/or from, Atsalis, the Mackinac Bridge Authority, and/or Michigan Department of Transportation.
>
> 9. Any and all billing records (including invoices) from Andrew C. Richner, and/or the Clark Hill law firm, which relate to, concern, or mention said Memorandum (including but not limited to billing records and invoices concerning the discussion of, the research of, the preparation of, and any follow up to, the Memorandum).

>10. Any and all documents, including e-mails or letters, demonstrating the transmittal of the Memorandum to Nick Atsalakis, Garry Manous, Atsalis Brothers Painting Co. ("Atsalis"), or to or from anyone on Atsalis's behalf.
>
>11. Any and all documents, including emails or letters, demonstrating the transmittal of the Memorandum to the Mackinac Bridge Authority, and/or the Michigan Department of Transportation.

Mot. for Protective Order, Ex. 1, Subpoena.

On December 12, 2011, the moving defendants' position was that Richner went "rogue" and acted on his own in producing and sending the Memorandum to the MDOT. Although the Memorandum is addressed to the defendants, the moving defendants' position was that they had not seen, nor did they authorize, the Memorandum. However, on December 22, 2011, the moving defendants' attorney retracted the previous statements and revealed that the moving defendants saw and approved the Memorandum before it was published by Richner. On December 27, 2011, the moving defendants filed the present motion for a protective order to block the production of the requested documents based on attorney-client privilege and the attorney work product doctrine.

## II.

Federal Rule of Civil Procedure 26 allows broad discovery in civil litigation, including "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). By its own terms, the rule contains a built-in limitation that protects from disclosure materials subject to an evidentiary privilege. That limitation can be enforced through Federal Rule of Civil Procedure 26(c)(1), which authorizes a court to enter protective orders "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 306 (6th Cir. 2007).

The moving defendants argue that they should not be required to produce the requested documents because they are protected by the attorney-client privilege, and the requested documents are subject to the work-product rule.

A.

The elements of the attorney-client privilege were summarized decades ago by Dean Wigmore as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

8 Wigmore, Evidence (McNaughton rev. ed.1961), § 2292, p. 554; *see also Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998). The purpose of the attorney-client privilege is to encourage clients to communicate freely with their attorneys. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). It is a matter of common law right, "the oldest of the privileges for confidential communications known to the common law." *Ibid.* But the essence of the privilege is confidentiality, and when confidentiality is destroyed, there is little justification for incurring the heavy cost to the production of relevant evidence which the privilege exacts. *Parkhurst v. Lowten*, 2 Swanst. 194, 216; 36 Eng. Rep. 589, 596 (Ch. 1895) ("The moment confidence ceases, privilege ceases."); *see also In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d 251, 254 (6th Cir. 1996). Because the privilege operates to reduce the amount of information discoverable during the course of a lawsuit, it is narrowly construed. *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 451 (6th Cir. 1983). By voluntarily disclosing an attorney's advice to a third party, for example, a client is held to have waived the privilege because the disclosure runs counter to the notion of confidentiality. *See Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1424 (3d Cir. 1991)

(holding that "voluntary disclosure to a third party of purportedly privileged communications has long been considered inconsistent with an assertion of the privilege.").

Federal Rule of Evidence 501 states that "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. The plaintiff's claims all arise under Michigan law, which recognizes an attorney-client privilege that is harmonious with the principles outlined above. *See Augustine v. Allstate Ins. Co.*, 292 Mich. App. 408, 420, 807 N.W.2d 77, 85 (2011) ("The attorney-client privilege attaches to direct communication between a client and his attorney as well as communications made through their respective agents." (quoting *Reed Dairy Farm v. Consumers Power Co.*, 227 Mich. App. 614, 618, 576 N.W.2d 709, 711 (1998))).

Under Michigan law, the privilege attaches to both written and oral communication, *In re Bathwick's Will*, 241 Mich. 156, 158-59, 216 N.W. 420, 421 (1927), but "[t]he scope of the attorney-client privilege is narrow, attaching only to confidential communications by the client to his advisor that are made for the purpose of obtaining legal advice," *Augustine*, 292 Mich. App. at 420, 807 N.W.2d at 85 (quoting *Reed Dairy Farm*, 227 Mich. App. at 618-19, 576 N.W.2d at 711); *see also Alderman v. People*, 4 Mich. 414, 422 (1857). "'Once otherwise privileged information is disclosed to a third party by the person who holds the privilege, or if an otherwise confidential communication is necessarily intended to be disclosed to a third party, the privilege disappears.'" *Leibel v. General Motors Corp.*, 250 Mich. App. 229, 242, 646 N.W.2d 179, 186-87 (2002) (quoting *Oakland Co. Prosecutor v. Dep't of Corr.*, 222 Mich. App. 654, 658, 564 N.W.2d 922 (1997)).

1.

The subpoena's first request demands production of all drafts of the Memorandum. It is undisputed that the moving defendants voluntarily provided the final version of the Memorandum to the MDOT, thereby waiving the attorney-client privilege with respect to the final version. *Leibel*, 250 Mich. App. at 242, 646 N.W.2d at 186-87.

The moving defendants argue that their disclosure did not waive the privilege as to the Memorandum's earlier drafts. In *Berryman v. Madison School District*, No. 265996, 2007 WL 549230, at *4 (Mich. Ct. App. Feb. 22, 2007), the court of appeals stated that "[t]here is no indication that waiving the privilege to the final document waives the privilege to its rough drafts." Even where the final document is intended to be disclosed to third parties, the drafts of the document may contain "confidential facts disclosed to the attorney for the purpose of securing the attorney's legal advice concerning how to proceed." *Id.* at *3. On the other hand, once a waiver is effectuated, all communications on the same subject matter are subject to disclosure and are not protected by the attorney-client privilege. *See Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1350-51 (Fed. Cir. 2005). "The waiver extends beyond the document initially produced out of concern for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not." *Id.* at 1349.

Moreover, *Berryman* is distinguishable from the present case because the moving defendants have attributed fault to Richner. "When the client alleges a breach of duty to him by the attorney, the privilege is waived as to all communications relevant to that issue." *People v. Houston*, 448 Mich. 312, 332, 532 N.W.2d 508, 516 (1995) (quoting 8 Wigmore, *Evidence* § 2327, 636-38). Additionally, the Michigan Rules of Professional Conduct include an exception to the attorney-client privilege that allows an attorney to reveal "confidences or secrets necessary to establish or collect

a fee, or to defend the lawyer or the lawyer's employees or associates against an accusation of wrongful conduct." Mich. R. Professional Conduct 1.6(c)(5). The comments to the rule explain:

> Where a legal claim or disciplinary charge alleges complicity of the lawyer in a client's conduct or other misconduct of the lawyer involving representation of the client, the lawyer may respond to the extent the lawyer reasonably believes necessary to establish a defense. The same is true with respect to a claim involving the conduct or representation of a former client. The lawyer's right to respond arises when an assertion of complicity or other misconduct has been made.

Mich. R. Professional Conduct 1.6, Comment.

Initially, 360 Construction sued only Atsalis Brothers Painting, Manous, and Atsalakis. But on October 14, 2011, the moving defendants filed a Notice of Non-Party Fault that alleged that the true culprit was their attorney, Andrew Richner. Based on that notice, 360 Construction moved to amend its complaint to add Richner as a defendant as permitted by Michigan Compiled Laws § 600.2957(2), and the Court granted the motion.

It makes no difference that the formal charge against Richner is brought by 360 Construction and not by his former clients; he was brought into the case as a direct result of the moving defendants' decision to name him in the Notice of Non-Party Fault. The Michigan Supreme Court has held that "[t]he object of the [attorney-client privilege] ceases and the attorney is no longer bound by his obligation of secrecy when his client or his representatives charge him, *either directly or indirectly*, with fraud or other improper or unprofessional conduct. Under such circumstances he may testify as to the facts." *Everett v. Everett*, 319 Mich. 475, 483, 29 N.W.2d 919, 922 (1947) (emphasis added) (quoting 5 Jones' Commentaries on Evidence (2d ed.) § 2165, 4114). Because the moving defendants have asserted that their former attorney is complicit in the defamatory conduct with which they are charged, they have waived the protection of the attorney-client privilege with respect to the Memorandum and its earlier drafts.

2.

The subpoena's second, fifth, sixth, seventh, eighth, ninth, and tenth requests demand that Richner supply a variety of documents and communications concerning the Memorandum. The moving defendants have waived the attorney-client privilege with respect to those documents and communications. Additionally, "[a] bill for legal services . . . is only protected [by the attorney-client privilege] to the extent that it contains confidential client information or the opinions of counsel." *Huron Restoration, Inc. v. Bd. of Control of E. Michigan Univ.*, No. 203719, 1999 WL 33455136, at *2 (Mich. Ct. App. 1999). The attorney-client privilege does not protect those documents from disclosure.

3.

The subpoena's third and fourth requests demand production of Richner's research used to complete the Memorandum and any document illustrating Richner's investigation of the Memorandum's allegations. Those documents do not constitute written or oral communications between a client and its attorney for the purpose of seeking legal advice.

4.

The subpoena's eleventh request is for any document demonstrating the transmittal of the Memorandum to the MDOT or the Mackinac Bridge Authority. That request does not seek communications between a client and its attorney; therefore the attorney-client privilege is no bar to the production of those documents.

B.

The defendants also argue that the requested documents are protected by the attorney work product doctrine. "The work-product doctrine protects an attorney's trial preparation materials from

discovery to preserve the integrity of the adversarial process." *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009) (citing *Hickman v. Taylor*, 329 U.S. 495, 510-14 (1947)). In a diversity case, the work product doctrine is governed by federal law; therefore, Federal Rule of Civil Procedure 26 governs. *See Taylor v. Temple & Cutler*, 192 F.R.D. 552, 559-60 (E.D. Mich. 1999). "Rule 26(b)(3) protects (1) 'documents and tangible things'; (2) 'prepared in anticipation of litigation or for trial'; (3) 'by or for another party or its representative.'" *In re Professionals Direct Ins. Co.*, 578 F.3d at 438 (quoting *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006)). Whether a document is prepared in anticipation of litigation depends on "(1) whether that document was prepared 'because of' a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that subjective anticipation was objectively reasonable." *In re Professionals Direct Ins. Co.*, 578 F.3d at 439 (quoting *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006)). The party claiming the protection bears the burden of showing "that anticipated litigation was the 'driving force behind the preparation of each requested document.'" *Ibid.* (quoting *United States v. Roxworthy*, 457 F.3d 590, 595 (6th Cir. 2006)).

In this case, the moving defendants bear the burden of showing that the requested materials were prepared in anticipation of litigation. They have not done so. Indeed, during the hearing on the present motion, counsel for the moving defendants admitted that the Memorandum and its drafts were not prepared in anticipation of any litigation. That acknowledgment ends the analysis. The materials sought by the subpoena are not protected by the work product doctrine. Even without the defendants' concession at the hearing, the issue is easily resolved: where the moving defendants have waived the attorney-client privilege, they have also waived the protection of the work product doctrine. *See In re Powerhouse Licensing, LLC*, 441 F.3d 467, 474 (6th Cir. 2006).

III

The Court finds that the materials sought by the subpoena are not protected by attorney-client privilege or the work product doctrine. The moving defendants waived the attorney-client privilege by naming their attorney as a non-party at fault, and the work product doctrine does not apply because the materials sought were not prepared in anticipation of litigation.

Accordingly, it is **ORDERED** that the motion for a protective order [dkt #24] is **DENIED**.

It is further **ORDERED** that Andrew Richter and Clark Hill, PLC must comply with the subpoena **on or before April 26, 2012**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: April 12, 2012

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 12, 2012.

s/Deborah R. Tofil
DEBORAH R. TOFIL